## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CLAUDIA ASTRID HURTADO VARGAS )
)
                        Plaintiff, )
)
v. )
)
UNITED STATES OF AMERICA )
)
                        Defendant. )
)
)

File No. **12-508 C**

**FILED**

**AUG 1 0 2012**

U.S. COURT OF
FEDERAL CLAIMS

### COMPLAINT

### I. JURISDICTION

1.      Jurisdiction of this Court is founded upon 28 U.S.C. § 1491(a)(1) as this action arises from a contract between Plaintiff CLAUDIA ASTRID HURTADO VARGAS and Defendant UNITED STATES OF AMERICA involving an amount in excess of $10,000.00.

2.      This case involves Plaintiff Hurtado's contract with the U.S. Government to serve as a confidential informant to assist in the identification and prosecution of criminals involved in drug trafficking and money laundering activities. While Plaintiff Hurtado performed her part of the agreement by infiltrating Colombian drug traffickers and serving as a money broker while acting as a confidential informant, Defendant failed to uphold its end of the agreement to defend and protect Plaintiff Hurtado when the Colombian authorities prosecuted her for acts that she performed as a confidential informant of the United States. As a result, Plaintiff Hurtado was convicted and incarcerated for several years in Colombia and sentenced to pay a large fine to the Colombian authorities.

## II. PARTIES

3.     Plaintiff CLAUDIA ASTRID HURTADO VARGAS is a natural person who is a citizen of Colombia and resides in the state of Florida.

4.     The Defendant is the United States of America (hereinafter "the United States"), who acted at all times material to this Complaint through its agencies, the Internal Revenue Service (hereinafter "IRS"), the United States Customs Service (hereinafter "USCS"),[1] and the Department of Justice (hereinafter "DOJ").

## III. FACTS

5.     Plaintiff Hurtado is a Colombian citizen who had been working in licit activities for several years when, in 1997, the United States contracted with Plaintiff Hurtado to serve as a confidential informant in order to assist in the identification and prosecution of criminals involved in illicit activities.

### A.     Plaintiff Hurtado's Recruitment and Work for the United States Government from 1997 to 1998 under the 1997 Contract

6.     In 1997, Plaintiff Hurtado attended a meeting at a Florida office of the IRS where U.S. officials asked her to become a confidential informant in relation to tax evasion operations by U.S. persons in connection with Colombia.

7.     The U.S. officials promised Plaintiff Hurtado that, as a confidential informant, she would receive good monetary compensation for her services and would be under the absolute protection of the United States.

---

[1] The USCS has since become part of the Department of Homeland Security as the Bureau of Customs and Border Protection and Immigration and Customs Enforcement Division.

8.      While in the meeting with U.S. officials, Plaintiff Hurtado signed an agreement with the U.S. Government ("the 1997 Contract"), but was not provided a copy of the 1997 Contract.

9.      Plaintiff Hurtado accepted the offer to become a confidential informant for the IRS based on her desire to assist the IRS combat illegal tax evasion and to enjoy financial benefits and protection of the United States. Plaintiff Hurtado did not accept the offer in order to avoid or minimize potential criminal liability; she had committed no crime and her agreement with the IRS did not arise in the course of any investigation or as part of any plea agreement.

10.     Plaintiff Hurtado worked for the IRS until late 1998.

**B.      Plaintiff Hurtado's Work for the United States Government from 1998 to 2000 under the 1998 Contract**

11.     In late 1998, Plaintiff Hurtado met with agents of the USCS who offered Plaintiff Hurtado work as a confidential informant for the U.S. Government under the direction of the USCS.

12.     As the United States has acknowledged in a certified statement, Plaintiff Hurtado "was authorized to participate as an informant by the El Dorado Task Force and specifically by Special Agents with the United States Customs Service, with the consent and approval of the United States Attorney's Office for the Eastern District of New York."

13.     According to the USCS, the El Dorado Task Force operated "out of the U.S. Customs Special Agent-in-Charge Office in New York," and was "recognized as one of the nation's most successful money laundering task forces and has been repeatedly cited as a model for other task forces. Led by the Customs Service and the Internal Revenue Service, the task force was created in 1992 to address the prolific money laundering threat in New York." As of 2001, the El Dorado Task Force was "comprised of 185 individuals from 29 federal, state, and

local agencies, including the FBI, the New York Police Department, and the New York State Banking Department. The El Dorado Task Force targets money laundering systems and financial crimes through undercover investigations, outbound operations, regulatory interventions, and other innovative techniques."

14.     In the course of meeting with USCS, Plaintiff Hurtado was introduced to Bonnie Klapper, then an Assistant United States Attorney ("AUSA"), who was to remain in contact with and receive information from Plaintiff Hurtado. The United States has acknowledged in a certified statement that AUSA Klapper met Plaintiff Hurtado.

15.     As the United States has acknowledged in a certified statement, Plaintiff Hurtado entered an agreement with the U.S. Government, under which Plaintiff Hurtado would serve as a confidential informant by impersonating a money launderer in Colombia and providing information to the United States through USCS and AUSA Klapper to support the investigation, prosecution and conviction of criminal activities related to money laundering.

16.     The parties agreed that the United States would protect Plaintiff Hurtado and provide her judicial assistance in relation to the activities that she would perform as a confidential informant.

17.     The parties also agreed that as compensation for her services, Plaintiff Hurtado would receive a percentage of the monies seized by the United States as a result of her work and information she provided.

18.     Plaintiff Hurtado entered into a contract with the United States based on the understanding that she would have the absolute protection and assistance of the United States in relation to her work, and that the Colombian government was fully informed and aware of operations with confidential informants.

4

19.     Plaintiff Hurtado's motive to serve as a confidential informant was to assist in combating illegal activities in exchange for financial benefits and protection of the United States. Plaintiff Hurtado did not accept the offer in order to avoid or minimize potential criminal liability; she had committed no crime and her agreement with the United States did not arise in the course of any investigation or as part of any plea agreement.

20.     While in the meeting with U.S. officials, Plaintiff Hurtado signed an agreement with the U.S. Government ("the 1998 Contract"), but was not provided a copy of the 1998 Contract.

21.     The U.S. officials asked Plaintiff Hurtado to choose an alias before signing the 1998 Contract. According to Plaintiff Hurtado's recollection, she chose the alias name of "Maria Guerrero" and signed the 1998 Contract under that alias.

22.     From 1998 to 2000, in the role of a confidential informant for the United States, Plaintiff Hurtado worked in Colombia.

23.     As the United States has acknowledged in a certified statement, "During the time period of 1998 through mid-2000, [Plaintiff Hurtado] was acting as a confidential informant, working under the direction of Special Agents of the [USCS]/El Dorado Task Force. During that time, [Plaintiff Hurtado] was a money broker."

24.     As the United States has acknowledged in a certified statement, Plaintiff Hurtado worked as a confidential informant "under the direction of agents with the El Dorado Task Force and [USCS], with the consent and approval of the United States Attorney's Office for the Eastern District of New York."

25.     As the United States has acknowledged in a certified statement, in the course of her work as a confidential informant, Plaintiff Hurtado "provided information to federal agents

5

regarding drug money which was in the United States. She would direct the individuals with whom she contracted to deliver money to individuals who were in fact undercover agents." "Once the drug proceeds were delivered, investigations were opened [by the United States] into those individuals who delivered the money."

26.     As the United States has acknowledged in a certified statement, Plaintiff Hurtado also "provided [the United States] information on competing money brokers."

27.     As the United States has acknowledged in a certified statement, Plaintiff Hurtado's work as a confidential informant led to the investigation, prosecution, and conviction of at least three criminals.

28.     As the United States has acknowledged in a certified statement, "[Plaintiff Hurtado] fulfilled her agreement."

29.     As the United States has acknowledged in a certified statement, the United States made payments to Plaintiff Hurtado "for her work as a confidential informant."

30.     As the United States has acknowledged in a certified statement, "no one connected with the U.S. Government or law enforcement traveled to Colombia in connection with this investigation. All meetings with [Plaintiff Hurtado] Vargas [relevant to the work with the El Dorado Task Force] took place in New York."

31.     As the United States has acknowledged in a certified statement, "when [Plaintiff Hurtado] came to the U.S. to meet with agents, the El Dorado Task Force paid for her flight on at least one occasion."

32.     As the United States has acknowledged in a certified statement, in compensation for her services, the United States paid Plaintiff Hurtado "a percentage of the dollars delivered to

the undercover agent" as well as "a percentage of any dollars seized during the investigation [in which she served as a confidential informant]."

33.     As the United States has acknowledged in a certified statement, Plaintiff Hurtado was paid by "The El Dorado Task Force and the Department of Justice Forfeiture Fund."

34.     As the United States has acknowledged in a certified statement, "[Plaintiff Hurtado] Vargas was required to report all of her activities to the [U.S.] Special Agents."

35.     As the United States has acknowledged in a certified statement, "case reports detailing [Plaintiff Hurtado's] role" in the El Dorado Task Force "do exist."

**C.     The United States' Failure to Respond to the Colombian Investigation of Plaintiff Hurtado**

36.     The 1998 Contract that the United States entered with Plaintiff Hurtado contemplated acts that she would perform in Colombia at the request of the United States that are criminal in nature (e.g., money laundering).

37.     Despite the nature of these acts and the inherent risk to Plaintiff Hurtado in performing them, the United States failed to timely inform the Colombian Government that Plaintiff Hurtado would be performing such activities in Colombia on behalf and at the request of the United States.

38.     As the United States has acknowledged in a certified statement, the United States did not request "support/cooperation" from the Colombian government or prosecutors in the course of the work by the El Dorado Task Force.

39.     As the United States has acknowledged in a certified statement, Colombian "[a]uthorities were not officially notified [of Plaintiff Hurtado's activities as a confidential informant]."

40.     On or around 2001, the Colombian authorities initiated an investigation of money laundering in which Plaintiff Hurtado had actively participated on behalf of the United States.

41.     On or around September 26, 2001, the Office of the Colombian Attorney General sent a letter to the United States requesting information in relation to proceedings taking place in the Eastern New York District for money laundering related to funds from cocaine sales in Colombia. The information requested would inform investigations for money laundering taking place in Colombia, in which Plaintiff Hurtado was identified as a suspect.

42.     As such, the United States was on notice no later than 2001 that Colombian authorities were investigating money laundering activities in which Plaintiff Hurtado had participated as a confidential informant of the United States. Despite having such information approximately two years before Plaintiff Hurtado was taken into custody, the United States failed to adopt prompt and effective measures to aid and protect her.

43.     On or around July 31, 2003, Plaintiff Hurtado was taken into custody by the Colombian authorities for the money laundering activities in which she participated as a confidential informant of the United States.

44.     After Plaintiff Hurtado was taken into custody, she, her children, her attorneys, the Colombian judge in charge of the criminal case and even the Colombian Ministry of Foreign Affairs, made numerous attempts, both oral and written and both in Colombia and in the United States, to obtain a proper statement from the United States that Plaintiff Hurtado had participated in the activities at issue as a confidential informant for the United States.

45.     The United States failed to timely respond.

46.     On or around November 25, 2003, nearly four months after Plaintiff Hurtado was taken into custody, Carmen D. Colon, judicial attaché of the U.S. Embassy in Colombia, sent a

letter to the Colombian Attorney General, stating that Plaintiff Hurtado was an active informant for the Money Laundering Unit of USCS in relation to the facts referenced in the charges brought against her in Colombia. As the United States knew or should have known, Colombian criminal procedure requires that such a letter be ratified in Court in order to serve as valid exculpatory evidence for Plaintiff Hurtado. Ms. Colon's letter was not ratified and thus not valid.

47.     On or around January 25, 2004, the Colombian Criminal Judge in charge of Plaintiff Hurtado's case notified the U.S. Embassy in Colombia of the omission and specifically requested that Ms. Colon come to the court to ratify the content of her November 25, 2003 letter. In the alternative, the Colombian Criminal Judge offered to personally come to the U.S. Embassy in order to obtain Ms. Colon's ratification.

48.     On or around May 15, 2004, nearly five months later, instead of complying with the options offered by the Colombian Criminal Judge, Ms. Colon instead sent an unratified letter to the Judge with the same information as her November 25, 2003 letter to the Colombian Attorney General.

49.     On or around February 22, 2005, the Colombian Ministry of Foreign Affairs sent a written communication to the U.S. Embassy in Colombia requesting that Ms. Colon be authorized to provide testimony in Plaintiff Hurtado's criminal proceeding. The United States did not respond to this communication.

50.     The Colombian Ministry of Foreign Affairs repeated the request that Ms. Colon be authorized to provide testimony in Plaintiff Hurtado's criminal proceeding in at least three subsequent written communications to the U.S. Embassy in Colombia, dated June 1, 2005; July 26, 2005; and December 9, 2005. The United States did not respond to any of these three requests.

51.     On or around June 21, 2005, the Colombian Criminal Judge issued Letter
Rogatory No. JE-243, addressed to U.S. authorities in the United States, requesting information
about Plaintiff Hurtado and her role as a U.S. informant in the case.

52.     On or around July 26, 2005, not having received a response from the United
States, the Colombian Criminal Judge sent a written questionnaire to Ms. Colon so that she could
respond in writing on behalf of the United States regarding Plaintiff Hurtado's role in the money
laundering. Ms. Colon did not respond.

53.     For nearly three years, from approximately July 31, 2003, until approximately
August 23, 2006, Plaintiff Hurtado remained in a Colombian jail.

54.     Despite the numerous requests and opportunities to provide information about
Plaintiff Hurtado, including by personal testimony or by responding to the written questionnaires
from the Colombian Criminal Judge, the United States failed to timely or effectively act.

55.     The main issue in Plaintiff Hurtado's trial in Colombia was not whether she
participated in a specific money laundering operation, but whether she did it so as a confidential
informant of the United States.

56.     Since the United States had not provided Plaintiff Hurtado with a copy of the
contracts that she signed with the United States and then repeatedly failed to properly respond to
the Colombian Court's requests, Plaintiff Hurtado could not provide evidence of her role as a
confidential informant.

57.     On January 18, 2006, Plaintiff Hurtado was convicted in Colombia for the crime
of money laundering. Plaintiff Hurtado was sentenced to ninety months in prison, and to a fine

the equivalent of five thousand Colombian legal minimum monthly wages.[2] As of August 1, 2012, the Colombian legal minimum monthly wage was approximately 535.600 Colombian pesos, or approximately US$ 321.36, and therefore the fine imposed on Plaintiff Hurtado is equivalent to approximately US$ 1,606,800.00.

58.     The Colombian Court found that Plaintiff Hurtado's defense that she was a confidential informant for the United States was not credible based on the failure of any representative of the United States to appear in court for the hearing as requested or to respond to the Court's requests for information.

59.     Specifically, the Colombian Court noted *inter alia* that:

During the April 14, 2005 public hearing, [Plaintiff Hurtado] told a story that, ten years prior, she worked undercover for [USCS] and that her association with the instant case [before the Colombian Court] arose from that activity, which was an absurd story, completely devoid of spontaneity and credibility. She dodged specific questions about her employment, recounting vapid situations that actually explained nothing, and claimed that Dardo Uturburo, an unknown ghost, was her contact. Neither did she explain the role he played in this case, which [Plaintiff Hurtado] called intelligence work, saying only that his job was to report on the requirements of money and that "participation was through Mr. Ivan Matallana, who was important to the U.S. Government because they wanted to determine what it was that Mr. Matallana wanted." Without explaining one how, one when, one where, one why, her story does not explain anything consistent with the role she claims to have played.
(...)
The corroboration attributed to CARMEN COLON is not true, because she ultimately said nothing (...) She visited the (...) Attorney General's Office, to whom she said that CLAUDIA ASTRID HURTADO VARGAS participated in the facts of this case with the approval of the United States Government (...) but at the time of explaining her knowledge about the matter she refused to attend the public hearing and provided no written response to the written rogatory, requests both made through diplomatic channels, as is legal, without any further success over these past years in obtaining any other evidence requested from the government [Ms. Colon] represents."[3]

---

[2] The relevant portion of the Colombian Court order sentencing Plaintiff Hurtado, along with other defendants, reads: "...imponerles, a cada uno, penas principales de (...) cinco mil (5,000) salarios mínimos legales mensuales vigentes de multa."
[3] This portion has been translated from the original Colombian Court order, which reads:

60.     On or about August 23, 2006, the Colombian Appellate Court (Superior Court of Bogota) decided to release Plaintiff Hurtado from custody, under probation. On or about August 31, 2006, the Colombian Appellate Court affirmed Plaintiff Hurtado's conviction. On October 24, 2007, the Supreme Court of Colombia affirmed the August 31, 2006 ruling of the Colombian Appellate Court against Plaintiff Hurtado.

61.     All of the charges against Plaintiff Hurtado arose from her activities as a confidential informant. Had the United States responded promptly, including to the Colombian letter rogatory, Plaintiff Hurtado would have been found innocent in the Colombian Court.

**D.     The United States did Not Respond until After Plaintiff Hurtado was Convicted**

62.     On or around September 26, 2006, after Plaintiff Hurtado was already convicted, after her conviction had been affirmed by a higher court, and after the she was out of jail and on probation, the U.S. Department of State delivered to the Colombian Embassy in Washington

---

"Ciertamente el 14 de abril de 2005, durante audiencia pública, la señora CLAUDIA ASTRID HURTADO VARGAS resultó con el cuento de desde diez años atrás trabajó bajo cubierta, para el Departamento de Aduanas de los Estados Unidos, y que su vinculación con éste caso sucedió justamente a partir de tal actividad con una historia absurda, carente por completo de espontaneidad ajena a credibilidad. Eludió preguntas concretas sobre su vinculación, relatando situaciones gaseosas que no dicen nada, para finalmente citar un personaje Dardo Uturburo como su contacto cuan fantasma igualmente desconocido. Tampoco precisó sobre el rol que desempeñó en éste caso, que ella misma llamó labores de inteligencia, limitándose a decir que su trabajo era informar sobre los requerimientos de dinero y "participación fue a través del señor Iván Matallana quien era pieza importante para el gobierno americano ya que ellos querian determinar qué era lo que el señor deseaba. Sin dar cuenta de un cómo, un cuándo, un donde, un porqué, lo que finalmente tampoco explica nada coherente con el papel que se atribuyó."
(...)
La corroboración que se atribuye al nombre CARMEN COLON no es verdad, porque ella finalmente no dijo nada (...) Visitó al (...) Fiscal General de la Nación, a quien dijo que CLAUDIA ASTRID HURTADO VARGAS intervino en los hechos de este caso con el beneplácito del gobierno de los Estados Unidos (...) pero al tiempo de explicar su conocimiento acerca del asunto, se negó a asistir a la audiencia pública y tampoco dio respuesta a la rogatoria escrita, ambos requerimientos hechos por cauce diplomático, como es legal, sin que se haya logrado tampoco a través de estos años, las demás pruebas requeridas al gobierno representado en ella."

D.C. the response of the DOJ to the June 21, 2005 letter rogatory No. JE-243, issued by the Colombian Criminal Judge. This belated response included: (1) a certified statement from AUSA Klapper of the Eastern District of New York, confirming that Plaintiff Hurtado had in fact participated in the operation that led to her criminal conviction in Colombia as a confidential informant of the United States; and (2) a copy of a check issued by USCS to Plaintiff Hurtado in compensation for the work that caused her conviction in Colombia.

63.     As the United States has acknowledged in AUSA Klapper's certified statement, the Colombian authorities "were not officially notified" of Plaintiff Hurtado's activities or role as a confidential informant.

64.     On October 24, 2007, the Supreme Court of Colombia affirmed the August 31, 2006 ruling of the Colombian Appellate Court against Plaintiff Hurtado. The October 24 affirmance highlighted, *inter alia,* that the United States response to the letter rogatory No. JE-243, delivered to the Colombian government on or around September 26, 2006, was received after Plaintiff Hurtado already had been convicted by the Colombian trial court, and after her conviction had been confirmed by the Colombian Appellate Court.

65.     In 2011, Plaintiff Hurtado's counsel in Colombia filed a new and special motion seeking to nullify Plaintiff Hurtado's conviction based on the belated response from the United States to the letter rogatory No. JE-243. As of the date of this filing, the motion is still pending before the Supreme Court of Colombia.

**E.     As a Result of the United States' Failure to Act, Plaintiff Hurtado Suffered Extensive Damages**

66.     In 1998, the United States entered into a Contract with Plaintiff Hurtado.

67.     As the United States acknowledged in a certified statement, Plaintiff Hurtado "fulfilled her agreement."

13

68. The United States, on the other hand, failed to comply with its obligations of good faith and fair dealing under that contract.

69. As set forth in Sections A and B, *supra,* Plaintiff Hurtado agreed to become a confidential informant for the United States only after she received absolute assurances that the United States would provide her total protection. Both Plaintiff Hurtado and the United States were fully informed that Plaintiff Hurtado's work in Colombia required her active participation in money laundering operations, which are criminal both in the United States and in Colombia.

70. The United States' assurances of complete protection of Plaintiff Hurtado were determinative in her decision to enter into the contract to become a confidential informant; Plaintiff Hurtado became involved in money laundering operations in Colombia at the request of the United States with the understanding that the United States would ensure that no conflicts would arise with the Colombian Government concerning the work that Plaintiff Hurtado would perform in Colombia.

71. The United States owed Plaintiff Hurtado, as one of its confidential informants, a duty of care, including upholding the spirit of the bargain between the parties, not willfully rendering an imperfect performance, and not failing to cooperate in the other party's performance. The United States failed to uphold its duty to cooperate and not to hinder.

72. The United States breached its duties when it did not inform in advance the Colombian Government that Plaintiff Hurtado would be performing activities criminal in nature in Colombia as a confidential informant.

73. Further, the United States breached its duties when it failed to negotiate with the Government of Colombia sufficient, adequate and effective protection for Plaintiff Hurtado, and

an effective and immediate procedure to address the criminal investigation of Plaintiff Hurtado for activities she was performing on its behalf.

74.     The United States' breach was ongoing throughout the time Plaintiff Hurtado remained in the Colombian jail and her case continued to wend its way through the Colombian judicial system.

75.     The United States' breach continues today as Plaintiff Hurtado attempts, without any assistance from the United States, to nullify the conviction resulting from the United States' inaction.

76.     As a result, Plaintiff Hurtado suffered extensive damages, including spending more than three years in a Colombian jail, the criminal process and conviction she endured, the legal fees she bore as a result, the large fine that she received as part of her conviction, and the publicity of her trial and conviction.

## IV. CAUSE OF ACTION - BREACH OF CONTRACT

77.     Plaintiff Hurtado incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

78.     The United States' 1998 offer to Plaintiff Hurtado through agents with authority to bind the United States of a contract to serve as a confidential informant for the United States followed by Plaintiff Hurtado's mutual agreement to so assist the United States and Plaintiff Hurtado's subsequent acceptance and performance of her contractual duties and obligations formed a binding contract between Plaintiff Hurtado and the United States.

79.     As the United States has acknowledged in a certified statement, the "U.S., through federal law enforcement agents, was aware of [Plaintiff Hurtado's] participation" as a confidential informant in the El Dorado Task Force's activities.

80.    The United States breached its contract with Plaintiff Hurtado when it failed in its duty to aid Plaintiff Hurtado when she was put under investigation by the Colombian authorities for the actions she took on behalf of the United States while in the performance of her contractual obligations.

81.    The United States breached its contract with Plaintiff Hurtado when it failed in its duty to take reasonable and appropriate measures in a prompt and timely manner to aid Plaintiff Hurtado when she was arrested by the Colombian authorities for the actions she took on behalf of the United States while in the performance of her contractual obligations.

82.    The United States breached its contract with Plaintiff Hurtado when it failed in its duty to take reasonable and appropriate measures in a prompt and timely manner to aid Plaintiff Hurtado when she was put on trial by the Colombian authorities for the actions she took on behalf of the United States while in the performance of her contractual obligations.

83.    The United States breached its contract with Plaintiff Hurtado when it failed in its duty to take reasonable and appropriate measures in a prompt and timely manner to aid Plaintiff Hurtado when she was convicted by the Colombian authorities for the actions she took on behalf of the United States while in the performance of her contractual obligations.

84.    The United States continues to breach its contract with Plaintiff Hurtado by failing in its duty to take reasonable and appropriate measures in a prompt and timely manner to aid Plaintiff Hurtado in nullifying her conviction by the Colombian authorities for the actions she took on behalf of the United States while in the performance of her contractual obligations.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hurtado respectfully requests the Court to:

(a)     enter judgment in favor of Plaintiff Hurtado and against the United States on all counts of the Complaint; and

(b)     award Plaintiff Hurtado the amount of Fifteen Million Dollars ($15 Million) together with interest thereon, and the costs of this suit.

Respectfully submitted this 10ᵗʰ day of August, 2012.

Ignacio J. Alvarez Martinez (D.C. Bar 994331)
ialvarez@alvarezmartinezlaw.com
Alvarez Martinez Law Firm LLC
1701 Pennsylvania Avenue, NW, Suite 300
Washington, D.C. 20006
Phone: (202) 465-4814
Fax: (202) 640-4374
*Attorney for Plaintiff Hurtado*