IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| CLAUDIA ASTRID HURTADO VARGAS | ) ) ) | |
| Plaintiff, | ) ) | No. 12-508C |
| v. | ) ) ) | Judge Elaine D. Kaplan |
| THE UNITED STATES OF AMERICA | ) ) ) | |
| Defendant. | ) ) | |

## MOTION TO INTERVENE

COMES NOW THE ALVAREZ MARTINEZ LAW FIRM, L.L.C. ["Alvarez Martinez"] by and through undersigned counsel, and moves, pursuant to R.C.F.C. 24 to intervene in this matter for the limited purpose of preserving its contractual interest in a share of the proceeds to be paid by Defendant to Plaintiff in settlement of Plaintiff's claims in the matter. Alvarez Martinez seeks this limited-purpose intervention so its counsel can directly protect Alvarez Martinez's interest by necessary and appropriate means so Alvarez Martinez can seek a resolution of this dispute through the Attorney/Client Arbitration Board of the District of Columbia Bar Association ["ACAB"]. Without court intervention Alvarez Martinez may be left without remedy given that the location of the funds received by Plaintiff pursuant to the settlement will be uncertain, and potentially unknowable. In support of its Motion to Intervene, Alvarez Martinez states as follows:

1.  On or about June 16, 2011, Plaintiff and Alvarez Martinez executed a Legal Services Agreement ["LSA"], by which Plaintiff retained Alvarez Martinez as her counsel to represent her for purposes of pursuing claims against the United States arising

1

out of the criminal prosecution, conviction, imprisonment, and imposition of pecuniary penalties of and upon Plaintiff by the government of Colombia for actions Plaintiff undertook at the behest of the United States government, while serving as a confidential informant for the United States.  See LSA attached hereto as Exhibit 1.

2. Pursuant to the express terms of the LSA, Plaintiff agreed to pay Alvarez Martinez for legal services a contingent attorney fee equal to thirty eight percent (38%) of the net amount recovered.  LSA ¶ 5.  Plaintiff also expressly authorized Alvarez Martinez to receive amounts recovered by settlement or judgment, to deposit such amounts in Alvarez Martinez's IOLTA bank account, and to distribute such amounts in accordance with the LSA.  Id.  To protect its interests in any recovery, the LSA specifically provides Alvarez Martinez with "a lien for Law Firm's fees and costs advanced on all claims and causes of action that are the subject of representation of Client under this agreement, and on all proceeds of any recovery obtained (whether by settlement, arbitration award of court judgment), if any."[1]  LSA ¶ 9.

3. From June 16, 2011 through May 5, 2014, attorney Ignacio Javier Alvarez ["Mr. Alvarez"] of Alvarez Martinez served as lead counsel and attorney of record for the Plaintiff.[2]

4. In March 2014, Mr. Alvarez came to believe that given the significance of Plaintiff's case and the increasing likelihood of protracted litigation, it could be beneficial to the Plaintiff's interest to recruit additional outside counsel.  With Plaintiff's consent,

---

[1] Such liens are permitted in the District of Columbia pursuant to District of Columbia Rule of Professional Conduct 1.8(i).

[2] Under Mr. Alvarez's supervision, Alvarez Martinez sought to advance Plaintiff's interest by, among other things, (a) attempting to contact U.S. government officials to discuss an amicable resolution of Plaintiff's claims; (b) preparing and filing Plaintiff's Complaint; (c) successfully opposing Defendant's first motion to dismiss; and (d) engaging with Defendant in initial settlement discussions.

Alvarez Martinez reached out to various Washington, D.C. area attorneys that given the compelling circumstances of the case, may have an interest in offering their assistance. These efforts resulted in Mr. Alvarez entering into discussion with several large international law firms, including Fried, Frank, Harris, Shriver & Jacobson LLP ("Fried Frank"), about their possible interest in assisting in the matter.

5. Ultimately, these discussions resulted in the Plaintiff and Alvarez Martinez agreeing to accept the assistance of Fried Frank.[3] At Fried Frank's request, and with the consent of Plaintiff and Alvarez Martinez, Fried Frank was to become attorney of record, take the lead in conducting the litigation, and have final decision-making authority with respect to litigation procedure, legal arguments, and settlement discussions. See Co-Counsel Agreement ¶ 1 attached hereto as Exhibit 2. Alvarez Martinez was to continue as co-counsel, be identified as "of counsel", and remain "responsible for supporting Fried Frank by providing factual and legal information as requested."[4] Id.

6. On May 5, 2014, upon the granting of Plaintiff's Motion for Substitution of Attorney, Filed with the Consent of Plaintiff's Attorney of Record, Douglas W. Baruch of Fried Frank was formally substituted for Mr. Alvarez as attorney of record in this matter.

---

[3] Although Fried Frank agreed to handle this matter on a *pro bono* basis, it reserved the right to recover up to 10% of the Plaintiff's total recovery for its costs and attorney's fees. To ensure that Plaintiff would not be responsible for additional legal fees, the LSA with Alvarez Martinez was amended so that any fees or costs ultimately paid to Fried Frank would come out of Alvarez Martinez's 38% contingency fee. See Amendment to Legal Services Agreement, attached hereto as Exhibit 3.

[4] In its capacity as non-lead co-counsel, Alvarez Martinez remained actively involved in the case. Among other things, it assisted Fried Frank with discovery production; responses to interrogatories; legal and factual research related to the Defendant's second motion for summary judgment, including finding, coordinating, and working with an expert in Colombian legal matters, who submitted a report in support of Plaintiff's opposition to Defendant's second motion to dismiss. In connection with settlement discussions, in addition to discussing with Plaintiff the benefits of settlement, Alvarez Martinez also assisted in compiling evidence of Plaintiff's monetary damage.

7. During the course of discovery, Plaintiff and Defendant renewed settlement discussions, which ultimately resulted in Defendant making a settlement offer in a range that in the opinion of both Fried Frank and Alvarez Martinez was in the Plaintiff's best interest to accept. In May 2015, in connection with these discussions and with the hope of encouraging a settlement, Alvarez Martinez offered to reduce the amount it was entitled to receive as part of a settlement to 20% of the recovery amount and to waive its costs.[5] Plaintiff rejected this offer.

8. Since then, Alvarez Martinez has repeatedly reiterated this offer, and along with Fried Frank, has engaged in lengthy discussions with Plaintiff in the hopes of reaching a resolution. These discussions have been complicated, however, by Plaintiff's insistence that the entire amount of the recovery be initially wired directly to her personal bank account, rather than to Alvarez Martinez's IOLTA account or, in the case of a dispute, to a neutral third party's escrow account while the dispute is resolved before the ACAB, as expressly agreed to by the parties and set forth in the LSA. See LSA ¶¶ 5, 10, 11, 17.

9. On January 22, 2016, Plaintiff and Defendant filed a Joint Status Report confirming that the parties had reached a common understanding of all of the terms of a settlement of Plaintiff's claims.

10. On February 9, 2016, Alvarez Martinez received from Fried Frank a copy of the most recent draft version of the settlement agreement, which contained a signature block for Mr. Alvarez's signature. This version provided that "in exchange for payment by the United States to Ms. Hurtado (to be made by electronic funds transfer pursuant to

---

[5] Similarly, it is Alvarez Martinez's understanding that Fried Frank agreed to waive its right to collect any amount of the recovery as attorney's fee. Fried Frank, however, had requested that its costs be reimbursed by Alvarez Martinez. See Amendment to Co-Counsel Agreement attached hereto as Exhibit 4.

4

written instructions to be provided to the United States by Fried, Frank, Harris, Shriver & Jacobson LLP, who will receive instructions from Ms. Hurtado) in the amount of "X" dollars ["the Settlement Amount"], inclusive of interest, with each party to bear its own costs, attorneys' fees, and expenses."  Settlement Agreement ¶ 5 attached hereto as Exhibit 5[6].

11.     On February 22, 2016, Plaintiff and Defendant filed a Joint Status Report requesting four additional days to secure the signature of Plaintiff on the settlement agreement.

12.     On March 1, 2016, during a previously scheduled phone call to discuss the status of the settlement, Fried Frank informed Alvarez Martinez that it was obligated to follow Plaintiff's instructions and that Alvarez Martinez should directly speak with Ms. Vargas regarding the status of the settlement.

13.     On March 2, 2016, after repeatedly reaching out to Plaintiff, Alvarez Martinez received a letter from Plaintiff in which she indicated that she had neither terminated Alvarez Martinez as her legal representatives or refused to pay the firm. Rather, she was requiring that Alvarez Martinez demonstrate to her the work it had done on her behalf and that once Plaintiff received the recovery, she would enter into discussions "on an objective basis" with Alvarez Martinez about the terms of the LSA.

14.     Subsequently, in a phone call on March 3, 2016, Fried Frank informed Alvarez Martinez that Plaintiff had instructed Fried Frank not to provide any additional information to Alvarez Martinez regarding the status of the litigation or the settlement.

---

[6] It is the understanding of the undersigned that the United States wishes the amount of the settlement to remain confidential, and would prefer that the amount not be disclosed in this motion.  Alvarez Martinez is aware of the settlement amount and will disclose same to the Court if requested.

15. On March 3, 2016, during a telephone call with Mr. Connor, Defendant's counsel, Alvarez Martinez learned for the first time that the settlement agreement had been fully executed. Alvarez Martinez has not reviewed or received a copy of this final fully executed settlement agreement.

16. Upon information and belief, Plaintiff has settled her claims against the United States in exchange for a payment of the Settlement Amount, with funds are to be paid by electronic funds transfer pursuant to written instructions provided to the United States by Fried Frank, who will receive instructions from Plaintiff.

17. Plaintiff has refused to authorize the payment of any portion of the settlement funds into Alvarez Martinez' IOLTA account as mandated by the LSA or to the escrow account of a neutral third party.

18. Absent an Order of this Court directing that Alvarez Martinez' contingent attorney fee of thirty eight percent (38%) of the Settlement Amount be paid into Alvarez Martinez' IOLTA account, it is likely that Alvarez Martinez will be unable to recoup any portion of the significant attorney's fees it is due in this matter. Plaintiff is not a United States citizen and has limited connections to the United States. Accordingly, the protection of Alvarez Martinez's attorney's fee by this Court may be the only way in which Alvarez Martinez is able to recover its fees.

19. Alvarez Martinez should be permitted to intervene in this action, for the limited purpose described above, as a matter of right. R.C.F.C 24(a) provides:

> Upon timely application anyone shall be permitted to intervene in an action… when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by the existing parties.

6

Alvarez Martinez is an interested party for the purpose of Rule 24(a). Parties "whose direct economic interests are implicated in an action are "interested parties." *See* Aurora Loan Services v. Craddieth, 442 F.3d 1018, 1022 (7th Cir. 2006). While the question is not without controversy, Federal Courts have recognized a terminated attorney's interest in a former client's action as the type of interest contemplated by Rule 24(a). *See* Gilbert v. Johnson, 601 F.2d 761, 767 (5th Cir. 1979); Gaines v. Dixie Carriers, Inc., 434 F.2d 52, 54 (5th Cir. 1970).

20. Pursuant to the LSA as amended, fee disputes must be submitted to arbitration before the ACAB. See LSA at ¶ 17. Such an arbitration may not commence until the settlement agreement is signed. Alvarez Martinez is currently in the process of the requesting the arbitration of the ACAB. Therefore, intervention in this action is necessary to protect Alvarez Martinez' financial interest in settlement proceeds in this matter.

21. The limited purpose intervention Alvarez Martinez seeks will not result in any harm to either the Court's proceedings or to any of the parties, will not substantially delay the proceedings, and will not prejudice any of the parties to this litigation. Alvarez Martinez only seeks to protect its contractual interest in the contingent attorney's fee share of the settlement proceeds pending arbitration of its fee dispute with Plaintiff.

## CONCLUSION

For the reasons set forth above, Alvarez Martinez requests that this Court grant the Motion to Intervene for the limited purpose of enforcing its contractual lien on settlement funds to be paid in this matter, and requests that this Court direct Defendant to

deposit Thirty Eight Percent (38%) of the Settlement Amount into the Court registry pending further Order of this Court.

Respectfully submitted,

/s/ Paul O'Reilly_____
Paul O'Reilly, Esq.
O'REILLY & MARK, P.C.
11200 Rockville Pike, Ste. 405
N. Bethesda, MD 20852
T (301)231-6330
F (301)231-6122
Email: Poreilly@oreillymark.com
*Attorney for Intervenor*
*Alvarez Martinez Law Firm LLC.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of March, 2016, a true copy of the foregoing was served on all parties to the herein action by the filing of the foregoing via ECF.

/s/ Paul O'Reilly_____
Paul O'Reilly, Esq.